1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,

11            Plaintiff,                    No. 08-mj-313 GGH

12       vs.                               <u>ORDER</u>

13   SHANNONJON BENTON,

14

             Defendant.

15   _____/

16   *Introduction and Summary*

17            Defendant seeks to suppress the fruits of a search incident to arrest at a VA

18   facility, a search which revealed a knife whose blade was in excess of three inches, and

19   marijuana.  Defendant was charged with these possession offenses, each with a six month

20   incarceration maximum in an information filed September 9, 2008.[1]  For the reasons given

21   herein, the motion is denied.

22   *Facts*

23            The facts of the case are not in serious dispute.  Defendant came onto the Mather

24   VA medical facility in her truck to pick up a prescription.  She was accompanied by a Mr. Hwa

25   _____

26        [1]  The charges were based on VA regulations: 38 CFR 1.218(b)(18) (possession of
     marijuana) and 38 CFR 1.218 (b)(39) (possession of a knife whose blade exceeded three inches).

                                         1

1  who had also brought his dog along for the ride.  The truck came to the attention of VA law

2  enforcement because of the dog's presence, which itself is a violation of VA regulations, 38 CFR

3  1.218(a)(11), unless the dog is present to aid a blind owner.  No allegation is made here that such

4  was the situation with Mr. Hwa's dog.  There can be no dispute under the facts that probable

5  cause existed to believe that defendant, along with Hwa, had brought the dog onto the VA facility

6  in her truck.

7          Officer Molitor caused a page to be made in the medical facility for Ms. Benton

8  on account of the dog problem, and she returned to the truck.  The officers permitted defendant to

9  go back into the facility to retrieve her prescription, but just afterwards another officer

10  (Schuman) walked around the truck and peered inside.  He discovered what appeared to be a

11  glass pipe in the form of a cigarette, one which the officer suspicioned was used to smoke illegal

12  substances.  Officer Schuman entered the truck and retrieved the pipe at which time the Officer

13  believed he smelled marijuana.  There was a residue in the pipe which the officers believed to be

14  marijuana residue (although there has been no testing confirmation of this fact known to the

15  undersigned).  Hwa was asked to whom the pipe belonged, and after initially casting the

16  ownership on defendant, Hwa thought better of this remark, and confessed to owning the pipe

17  himself.  Hwa was arrested at this point for introduction of a controlled substance (marijuana

18  residue) onto the VA facility.  At this time, a complete search of the truck was performed,

19  revealing no contraband, but only the existence of clear plastic baggies in which no illegal

20  substances or residue were found.

21          More officers appeared on the scene by this time, and Officers Keller and Speer

22  were instructed to enter the hospital and arrest defendant for "possession of paraphernalia."[2]  The

23  officers did as directed, and after bringing defendant back to her car, incident to that arrest,

24  _____

25      [2] The government asserts, without evidence, that defendant was to be arrested for
    possession of a controlled substance on account of the residue in the pipe.  If the government
    desires to contest the words of the police report attached to defendant's motion, it is incumbent
26  on the government to produce some evidence to that effect.

2

1   searched Benton's purse which turned up another glass pipe as well as marijuana and a knife

2   whose blade exceeded three inches.  At the time of the search, the purse was in Benton's

3   possession.  Defendant was handcuffed and placed for a short time in an officer's patrol car.

4   Despite discovering that defendant was driving with a suspended license and did not have

5   accident insurance, defendant was only cited for the marijuana/knife and then released.  It is

6   unknown whether defendant was permitted to drive off the facility despite her suspended license.

7   *Discussion*

8          Well established now is the proposition that a search incident to arrest is lawful.

9   United States v. Robinson, 414 U.S. 218, 94 S. Ct. 467 (1973).  Both a search of the person and,

10  within certain parameters, the search of an area proximate to the person is permitted.  If an arrest

11  is made, the relative minor nature of the crime does not contract the right to search incident to

12  arrest.  Id. at 234-235, 94 S. Ct. at 476.  Nor can it be said that a person may not be arrested for

13  minor crimes as opposed to merely cited.  Atwater v. City of Lago Vista, 532 U.S. 318, 121 S.

14  Ct. 1536 (2001).  Two equally applicable rationales exist to support the right to search incident to

15  arrest – the potential for weapons on the person (exactly what was found in this case) and the

16  need to preserve evidence which may be on the person.  Robinson, 414 U.S. at 234, 94 S.Ct. at

17  476.  A bag or purse being held by an arrestee is clearly subject to search incident to arrest.  See

18  United States v. Burnette, 698 F.2d 1038, 1049 (9th Cir. 1983); United States v. Gallop, 606 F.2d

19  836, 838 (9th Cir. 1979).

20          Thus, up to now, the seizure of defendant's purse and discovery of the marijuana

21  and knife is rather unremarkable as a search incident to arrest.  However, defendant focuses her

22  suppression efforts on the alleged illegal searches of the car, and the asserted, resultant lack of

23  probable cause to arrest defendant.  The court need not focus on the initial search of the car since

24  it agrees with defendant's later argument that once Hwa admitted ownership of the pipe and was

25  arrested for it, probable cause to arrest defendant for drug possession was lacking.

26  \\\\\

1    The government argues that Hwa's initial equivocation on ownership of the pipe

2    authorized a lingering belief on the part of the officers that defendant may have owned the pipe,

3    and therefore possessed drugs on her person.  Not only is this disproven from a subjective

4    standpoint – the officers believed Hwa's later ownership assertion and arrested *him*, but it is

5    lacking from an objective standpoint.  First, the government's argument is belied by the facts

6    wherein even the officers on the scene were not instructed to arrest defendant for possession of

7    controlled substances.  Rather, the officers were (mistakenly) instructed to arrest the defendant

8    for "possession of paraphernalia."[3]

9    But more importantly, even if the instructing officer meant to say – arrest

10   defendant for possession of a controlled substance on account of the residue in the pipe – a

11   reasonable officer on the scene would have no reason to believe, based on the facts before him,

12   that there was a joint ownership of the pipe.  Hwa never intimated as such, first saying that

13   defendant had sole ownership, and then admitting his sole ownership.  The government's

14   argument that the officers were permitted to conjure up a joint ownership/possession theory of

15   the pipe is simply not objectively reasonable.  While a suspicion of such might have been

16   justified, one cannot say that there was probable cause to believe that defendant at any time had

17   drugs in her possession, residue or otherwise, based on a repudiated assertion by Hwa that

18   defendant owned the pipe, and the relatively slight evidence of drugs found in the truck

19   (lingering marijuana smell and residue in the pipe only).

20   However, this does not end the search issue; rather, the fact that the VA officers

21   could have arrested defendant for bringing a dog onto VA property eviscerates any finding that

22   \\\\\

23   \\\\\

24   \\\\\

25

26   [3] All parties agree, or at least the government does not contest, that mere possession of
paraphernalia like a smoking pipe is not a crime.

4

1    defendant's search incident to arrest was unlawful because probable cause was lacking for the

2    stated cause of arrest.[4]

3            Defendant might argue that the officers who arrested defendant did not arrest her

4    for bringing a dog onto VA property, and they would be correct in this factual assertion.

5    However, so long as a valid basis to arrest defendant existed, the subjective beliefs of the officers

6    as to why they were arresting defendant became inconsequential.  Devenpeck v. Alford, 543 U.S.

7    146, 125 S. Ct. 588 (2004).  See also Tatum v. City and County of San Francisco, 441 F.3d 1090,

8    1094 (9th Cir. 2006): "(See Devenpeck v. Alford, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d

9    537 (2004) ('[a police officer's] subjective reason for making the arrest need not be the criminal

10   offense as to which the known facts provide probable cause'.  Under Devenpeck, the subjective

11   reason that Officer Smith arrested Fullard is irrelevant so long as the available facts suggested

12   that Fullard was committing a crime.").  Here, there can be no doubt that defendant had

13   committed the dog offense proscribed by the VA regulation.

14           One further point need be explored, and that is the ambiguous nature of the dog

15   offense as a "crime."  The VA regulations plainly prohibit persons from bringing non-seeing eye

16   dogs onto a VA facility.  38 CFR 1.218(a)(11).  Further there is no doubt that such conduct

17   subjects the person(s) bringing the dog onto the VA facility to be "arrested and removed."  38

18   CFR 1.218(b).  The remainder of section (b) of the regulation in proscribing dog possession as a

19   crime is less than clear in that the specific criminal penalties set forth for the laundry list of

20   prohibited specific conduct does not directly or indirectly implicate dog possession.  In all

21

22       [4] Although relating to the court in its papers that bringing the dog onto VA property was
     an arrest-worthy offense (and there is no doubt that by allowing the dog to ride in the truck
23   defendant brought the dog onto VA property), the government did not argue this theory as a
     reason to deny the motion to suppress.  Thus, the undersigned is left with the decision, as he
24   often is, with the dilemma of whether to find a waiver of this otherwise valid theory of search
     incident to arrest, or whether to simply apply binding precedent to the facts as presented by the
25   parties.  Because the government did assert that bringing the dog onto VA property was unlawful,
     and could subject the "bringers" to arrest, the court will follow through with the legal ruling
26   which flows from this assertion.

5

1  likelihood, although arrest and removal for dog possession is authorized, no criminal penalties

2  could be assessed.

3         However, because no contention is made that the VA regulation permitting "arrest

4  and removal" (without more) is invalid, the undersigned has determined that the possible lack of

5  criminal penalties for dog possession does not detract from the need to search incident to arrest.

6  And, a close reading of the "incident to arrest" cases, such as Robinson, supra, indicates that the

7  "safety to the officer" rationale for allowing the search incident to arrest would stand as

8  forcefully in the "arrest and remove" context as it does in the "arrest and prosecute" context.

9  Indeed, safety may be the primary rationale.  Nothing in Robinson indicates that the preservation

10  of evidence rationale must co-exist with the safety to officer rationale.

11  *Conclusion*

12         For the foregoing reasons, defendant's motion to suppress (Docket # 6) is denied.

13  A status conference is set in this case before the undersigned for February 9, 2009 at 9:00 a.m.

14  DATED: 01/21/09

                                /s/ Gregory G. Hollows
15
                        _____
                                UNITED STATES MAGISTRATE JUDGE
16  GGH:gh:035
    benton.supp

17

18

19

20

21

22

23

24

25

26